UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RENEE WELCH, JASON DEMELLO,
MAMADOU DEMBELE, SOULEYMANE
MORI, DOLLY MOSER, and MINERVA
ELSAYED,

          Plaintiffs,

v.

PEOPLE'S UNITED BANK, NATIONAL
ASSOCIATION,

          Defendant.

Civil Action No. 1:20-cv-11390-NMG

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS AS TO PLAINTIFFS JASON DEMELLO, DOLLY MOSER, AND MINERVA ELSAYED

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant, People's United Bank, National Association ("PUB"), through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Partial Motion to Dismiss the Complaint. This lawsuit has been brought by former PUB employees Minerva ElSayed, Mamadou Dembele, Souleymane Mori, Dolly Moser and Jason DeMello, and current employee, Renee Welch. The Complaint attempts to allege that PUB, through the actions of certain managers in Eastern Massachusetts, created a hostile work environment, and negatively impacted their employment, purportedly because of their membership in legally protected classes.[1]

---

[1] Because PUB has moved for partial dismissal of the Complaint, PUB will defer filing an Answer to the other three Plaintiffs' allegations until disposition of this Motion. See Fed. R. Civ. P. 12(a)(4) (setting time to serve and file a responsive pleading after disposition of a motion to dismiss); *Baystate HMO Mgmt. v, Tingley Sys.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001) (permitting filing of an answer after disposition of a partial motion to dismiss and denying plaintiff's motion for entry of a default judgment for defendant's failure to answer other counts while the partial motion to dismiss was pending).

The Complaint asserts four causes of action by the Plaintiffs as follows: (1) discrimination and retaliation based upon either race (Welch, Dembele, and Mori), sexual orientation (DeMello), gender (Moser), or national origin and religion (ElSayed) under Title VII of the Civil Rights Act of 1964 ("Title VII") and Mass. General Laws c. 151B ("Chapter 151B"); (2) race discrimination and retaliation (Welch, Dembele and Mori) under 42 U.S.C. § 1981 and Chapter 151B; (3) age discrimination under the Age Discrimination in Employment Act and Chapter 151B (Moser); and (4) wrongful termination in violation of public policy (DeMello).

Pursuant to Rule 12(b)(6), the Court should dismiss the Complaint as to Plaintiffs Moser, DeMello and ElSayed with prejudice for the following reasons:

- <u>Moser</u>: Moser failed to timely assert her two claims at the Massachusetts Commission Against Discrimination ("MCAD"). Therefore, her claims are time-barred, and she has failed to exhaust her administrative remedies as required by Chapter 151B and Title VII. Accordingly, her claims must be dismissed as a matter of law.

- <u>DeMello</u>: DeMello failed to ever assert either of his two claims at either the MCAD or EEOC, and therefore he has failed to exhaust his administrative remedies as required by Chapter 151B and Title VII. Accordingly, his claims must be dismissed as a matter of law.

- <u>DeMello</u>: DeMello has also failed to state a claim for wrongful termination in violation of public policy, because such a claim is barred by the exclusivity provision of Chapter 151B. Therefore, this claim must also be dismissed as a matter of law.

- <u>ElSayed</u>:  ElSayed failed to assert her lone hostile work environment claim in her earlier Charge of Discrimination at the MCAD that she now asserts in the Complaint.  Therefore, she has failed to exhaust her administrative remedies as required by Chapter 151B and Title VII.  Accordingly, her claim must be dismissed as a matter of law.

## BACKGROUND

Moser filed a charge of discrimination (the "Charge") with the MCAD on October 3, 2019.  Moser's Charge is attached to this Motion as <u>Exhibit A</u> and is central to her allegations in the Complaint.[2]  In both her Charge and the Complaint, Moser claims that she was subjected to gender-based harassment and she voluntarily resigned and took a position at another bank in "November, 2018."  *Compl.* ¶ 124.

DeMello never filed any Charge with the MCAD or the EEOC.  In the Complaint, DeMello claims for the first time that he was subjected to harassment based on his sexual orientation in 2016 and 2017.  *Compl.* ¶¶ 51-53.  DeMello further alleges that in 2017 he was subject to retaliation after he complained about his alleged treatment and the allegedly discriminatory treatment of other employees.  *Compl.* ¶¶ 57-58.  Additionally, the Complaint

---

[2] The Court should consider Moser's MCAD Charge since it is specifically alleged by Moser and referred to in ¶ 128 of the Complaint and it is central to her claims of discrimination.  The Court can consider administrative filings (the authenticity of which is not in dispute) without converting a motion to dismiss to one for summary judgment.  *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("[W]hen a complaint's factual allegations are expressly linked – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merged into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."); *Edwin v. Blenwood Assocs.*, 9 F. Supp. 2d 70, 72 (D. Mass. 1998) (when an MCAD charge is substantively referenced in a complaint, a court "may consider the MCAD [charge] in making its decision on [a 12(b)(6)] motion [to dismiss] without converting the matter into a summary judgment proceeding.").

also alleges that DeMello voluntarily resigned his position with PUB in "July, 2017." *Compl.* ¶ 60.

Finally, on or about September 14, 2018, Plaintiff ElSayed filed a Charge with the MCAD.  ElSayed's Charge is attached to this Motion as <u>Exhibit B</u> and is central to her allegations in the Complaint.[3]  ElSayed's Charge alleges that she was subjected to disparate treatment because of her religion, national origin, sex, and race, and that she was allegedly retaliated against for complaining of this discrimination.  Specifically, she claimed that she was "singled out" at a May 3, 2017 staff meeting for instigating an office conflict, that shortly after this staff meeting another PUB manager falsely accused her of using profanity in April 2017, that she was excluded from an afternoon training session in December 2017 because she missed the morning session even though others were permitted to miss portions of the training, and that she was placed on a Performance Coaching Plan after complaining of being targeted with respect to the training.  <u>Ex. B</u> at ¶¶ 4-10.

In contrast, now in the Complaint, while omitting all of the allegations that were in her Charge, ElSayed alleges something new and different - that Anna Greener, PUB's Growth Manager for Eastern Massachusetts, subjected her to "constant attacks, insults, and mocking" on the basis of her religion and national origin.  *Compl.* ¶¶ 133-138.  Specifically, the Complaint alleges that "Greener told ElSayed that she hoped she was not a terrorist. Greener mocked ElSayed by saying that ElSayed probably did not have running water while in Egypt.  Greener told ElSayed that she pitied her.  Greener mocked ElSayed saying that it must be difficult to be subject to the rules and laws imposed by her husband, and then asked what those rules were.

---

[3] As with Moser's MCAD Charge, the Court should consider ElSayed's MCAD Charge since it is specifically alleged by ElSayed and referred to in ¶ 142 of the Complaint and it is central to her claims of discrimination. *See* note 2, *supra*.

Greener mocked ElSayed's observance of Ramadan, calling it 'horrible.' Greener would also mock ElSayed's Muslim culture and religion by asking why she does not cover her hair like she must have done in Egypt." *Compl.* ¶ 134.  None of these allegations were made in the Charge, either directly or even by implication.  Moreover, the Complaint makes no mention of any of the alleged disparate treatment that ElSayed referenced in her Charge.

## **ARGUMENT**

## I.     **THE STANDARD OF REVIEW FOR RULE 12(b)(6) MOTIONS WARRANTS DISMISSAL.**

A court should dismiss a complaint under Fed. R. Civ. P. 12(b)(6), as here, when it does not "allege 'enough facts to state a claim to relief that is plausible on its face.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 1960 (2009).  Although for purposes of the motion, this Court must accept well-pled and factually supported allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft*, 129 S. Ct. at 1949-1950.  Further, the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Fed. R. Civ. P. 12(b)(6) when the facts alleged in the complaint" cannot support the legal conclusion.  *Young v. City of Mt. Rainer*, 238 F.3d 567, 577 (4th Cir. 2001).  In short, a plaintiff has an "obligation to provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Under this standard, the claims of Moser, DeMello and ElSayed must be dismissed with prejudice.

II.   **MOSER HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES FOR HER CLAIMS PURSUANT TO M.G.L. c. 151B AND TITLE VII BECAUSE SHE DID NOT TIMELY ALLEGE A CLAIM AT THE ADMINISTRATIVE LEVEL.**

Moser's claims are time-barred.  It is well-settled that a plaintiff, as a prerequisite to filing a lawsuit arising under Chapter 151B or Title VII, must file a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") within 300 days of the alleged discriminatory act.  *Posada v. ACP Facility Servs.*, 2019 U.S. Dist. LEXIS 126405, at *13 (D. Mass. July 29, 2019).  "The predicate of [timely] administrative filing is mandatory to filing a civil suit.  It may not be waived."  *Everett v. 357 Corp.*, 453 Mass. 585, 600 (2009); *see Windross v. Barton Protective Servs.*, 586 F.3d 98, 102 (1st Cir. 2009) (citing M.G.L. c. 151B, § 9).  This bar is not discretionary; it is jurisdictional.  *See Buntin v. City of Boston*, 2017 Mass. App. Unpub. LEXIS 659, at *3 (June 20, 2017) ("Where a plaintiff has failed [to file a charge with the MCAD within 300 days], the Superior Court lacks jurisdiction to entertain claims under c. 151B.").  Non-compliance with prescribed time limits of administrative remedies "bars the courthouse door."  *Newman v. Lehman Bros. Holdings*, 901 F.3d 19, 26 (1st Cir. 2018) (quoting *Bonilla v. Muebles J.J. Álvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999)).

Here, Moser filed her Charge on October 3, 2019.[4]  Thus, any alleged discriminatory act which occurred on or before December 6, 2018 (*i.e.*, 300 days earlier) is time-barred.  Moser asserts she was subjected to gender harassment so severe that she was effectively constructively discharged in November 2018.  *Compl.* ¶ 125.  Thus, her alleged constructive discharge, the

---

[4] Plaintiffs' false conclusory allegation that that she "initiated an action before the MCAD…[o]n or about September 27, 2019," *Compl.* ¶ 128, is definitively rebutted by the Charge materials the MCAD forwarded to PUB, including the cover letter by Moser's attorney dated October 1, 2019, the MCAD summary sheet indicated a "filing date" of "10/3/19" and a copy of the Charge stamped as received by the MCAD on October 3, 2019. *See* Ex. A.

latest possible alleged adverse employment action in the Charge and Complaint, is time-barred.

On this basis, Moser's Complaint must be dismissed as a matter of law.

**III.**     **DEMELLO HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES FOR HIS CLAIMS PURSUANT TO M.G.L. c. 151B AND TITLE VII BECAUSE HE NEVER ALLEGED A CLAIM PURSUANT TO M.G.L. c. 151B AT THE ADMINISTRATIVE LEVEL.**

For the first time in the Complaint filed in 2020, DeMello asserts claims of sexual

orientation discrimination several years ago pursuant to Title VII, despite the fact that he last

worked for PUB back in 2017 and never filed any Charge of Discrimination with the EEOC or

MCAD. DeMello attempts to avoid the obvious statute of limitations and administrative

exhaustion bars to his claims by admitting that he did not file a charge of discrimination with the

EEOC and MCAD before filing this case and claiming he did not file "because sexual orientation

discrimination had not previously been covered by Title VII of the Civil Rights Act of 1964"

until the recent Supreme Court decision *Bostock v. Clayton Cty.*, 590 U.S. ___, 140 S. Ct. 1731,

1751, 207 L. Ed. 2d 218, 246 (June 15, 2020). DeMello's argument, however, is wholly without

merit.

DeMello never previously filed any charge of sexual orientation discrimination. The

Supreme Court's *Bostock* decision simply clarified what the law under Title VII has always been

- that Title VII's prohibition of sex discrimination encompasses discrimination on the basis of

sexual orientation - rather than create a new cause of action for sexual orientation discrimination

as suggested by the Complaint. Importantly, the three plaintiffs in the consolidated appeals in

Bostock had all previously filed timely sexual orientation discrimination charges with the EEOC.

*See Bostock v. Clayton Cty.*, 2017 U.S. Dist. LEXIS 217815, *3 (N. D. Ga. July 21, 2017)

(charge filed in 2013); *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 109 (2nd Cir. 2018) (charge

filed in 2010); *EEOC v. R.G.*, 884 F.3d 560, 569 (6th Cir. 2018) (charge filed in 2014). *Bostock*

certainly does not hold that an employee (DeMello) who has not been employed by a defendant (PUB) for over three years suddenly has free rein to ignore the well-established 300-day administrative and 3-year judicial statute of limitations and retroactively assert time-barred discrimination and retaliation claims.   Therefore, DeMello's failure to file a timely charge of discrimination with the EEOC or MCAD is fatal to his claim and it must be dismissed as a matter of law.

Indeed, the United States District Court of the Eastern District of Pennsylvania recently considered and rejected the precise argument asserted by DeMello.  *See Doe v. Dejoy*, 2020 U.S. Dist. LEXIS 136491, *31-32 (E.D. Pa.  July 31, 2020).  In that case, the District Court ruled that it did "not need to determine *Bostock's* 'retroactivity' [because] '[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.'"  *Id.*  (quoting *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 312-13, 114 S. Ct. 1510, 128 L. Ed. 2d 274 (1994)); *see also United States v. Peppe*rs, 899 F.3d 211, 230 (3rd Cir. 2018) (explaining that "when the Supreme Court 'construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law'").  Thus, the court found that the Supreme Court in *Bostock* did not create new law but defined the term "sex" in an existing statute.  *Id.*  DeMello's attempt to retroactively create and assert a new claim based on *Bostock* fails as a matter of law.

Moreover, as to Massachusetts' anti-discrimination law, there was *never* any purported ambiguity about whether Chapter 151B recognized a cause of action for sexual orientation discrimination and retaliation.  At all relevant times, Chapter 151B recognized such a cause of action.  *See McCrohan v. Uxbridge Police Ass'n Local #123, MCOP*, 2014 U.S. Dist. LEXIS 203770, *16 (D. Mass., November 12, 2014) ("The Defendants correctly point out that Title VII

does not protect employees from discrimination based on sexual orientation, whereas 151B does.") Thus, DeMello simply chose not to file a charge with the MCAD.  The 300-day administrative filing requirement having long since run (it expired in 2018), DeMello's claim in Count I under Chapter 151B and Title VII is time-barred and must be dismissed as a matter of law.  *Everett*, 453 Mass. at 600; *Windross*, 586 F.3d at 102.

## IV. DEMELLO'S WRONGFUL TERMINATION CLAIM (COUNT IV) IS BARRED BY THE EXCUSIVILITY PROVISION OF M.G.L. c. 151B

DeMello's second claim against PUB, his common law claim of Wrongful Termination (Count IV), is barred by the exclusivity provision of M.G.L. c. 151B, because it is simply a recast version of his (time-barred) statutory discrimination and retaliation claims.  In Massachusetts, a common law-based wrongful termination claim can only prevail when a comprehensive, statutory remedy does <u>not</u> already exist.  *Melley v. Gillette Corp.*, 475 N.E. 2d 1227 (Mass. App. Ct. 1985), *aff'd* 491 N.E.3d 252 (Mass. 1986).

When a comprehensive remedial statute covers an employee's claims against his employer, the exclusive remedy for the aggrieved employee is provided by the statute and the employee is precluded from bringing a common law cause of action.  *See Ourfalian v. Aro Mfg. Company, Inc.*, 557 N.E. 2d 6, 8 (Mass. App. Ct. 1991) ("To create common law actions based on policies expressed in those statutes would impermissibly interfere with those remedial schemes").  The rationale for the exclusivity of the statutory remedy is that where there is a comprehensive remedial statute, the creation of a new common law action based on public policy expressed in that statute would interfere with the remedial scheme.  Not only would the legislative preference for an administrative solution be circumvented, but serious problems would be posed as to the extent of the remedy to be provided.  *Melley*, 475 N.E.2d at 1229.

*Melley* prevents plaintiffs from using the common law as an "end around" to avoid complying with the administrative process outlined by the legislature.

In Massachusetts, the legislature has enacted a comprehensive remedial statute to address DeMello's allegation that PUB discriminated and/or retaliated against him because of his sexual orientation, or because of his complaints about discriminatory treatment of other employees. *See* M.G.L. c. 151B, § 4(1) (prohibiting sexual orientation discrimination); M.G.L. c. 151B, § 4(4) (prohibiting retaliation). Massachusetts courts have repeatedly held that *Mass. Gen. Laws* ch. 151B "provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections." *Dexter v. Dealogic, LLC*, 390 F. Supp. 3d 233, 244 (D. Mass. 2019) (quoting *Charland v. Muzi Motors, Inc*., 417 Mass. 580, 631 N.E.2d 555, 559 (Mass. 1994); *see Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382, 415 (2016) ("Insofar as the plaintiff's common law claim[ ] [is] merely [a] recast version[ ] of' a claim that could have been made 'under [G. L.] c. 151B, [it is] barred by that statute's exclusivity provision.'"). For example, in *Melley*, the Supreme Judicial Court affirmed the decision and reasoning of the Appeals Court when it dismissed a claim of wrongful termination based upon age discrimination because it was precluded by M.G.L. c. 151B. *Melley*, 475 N.E.2d at 1228-29, aff'd 491 N.E.3d 252 (Mass. 1986); s*ee also Claudomir v. Massachusetts*, 2016 U.S. Dist. LEXIS 15106, *14 (Feb 8, 2016) (dismissing wrongful termination in violation of public policy claim as falling within the scope of Chapter 151B's exclusivity provision); *Hunt v. Wyle Lab.*, 997 F. Supp. 84, 91 (D. Mass. 1997) ("The Court holds that Hunt's attempt to circumvent the strict filing requirements of G.L. ch. 151B by casting his handicap discrimination claim as a common law claim for wrongful termination is precluded as a matter of firmly entrenched law").

In the Complaint, DeMello expressly bases his wrongful termination claim on the purported discrimination and retaliation he experienced at PUB. *Compl.* ¶¶ 179-180. But DeMello plainly failed for several years to bring timely claims of discrimination and retaliation against PUB and his attempted "end around" that bar by recasting his claim as one for wrongful termination is clearly precluded by Chapter 151B. Therefore, this claim must also be dismissed as a matter of law.

## V.   ELSAYED HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES WITH RESPECT TO HER CLAIMS OF DISCRIMINATION AND RETALIATION PURSUANT TO M.G.L. c. 151B AND TITLE VII.

The Massachusetts anti-discrimination law requires that, before pursuing a discrimination claim in court under M.G.L. c. 151B, an employee must first submit a complaint to the MCAD setting forth the particulars of the allegedly discriminatory conduct. *See* M.G.L. c. 151B, § 5; *see also Sereni v. Star Sportswear Mfg. Corp.*, 24 Mass. App. Ct. 428, 430 (1987) (holding, "In the absence of a timely complaint to the MCAD, there may be no resort to the courts."), *rev. denied* 400 Mass. 1107 (1987). In the same vein, it is well-settled that a claimant may not raise new claims of discrimination under M.G.L. c. 151B in a judicial proceeding if those claims were not raised in the underlying administrative charge. *See, e.g., Cullinane v. Massachusetts Inst. of Tech.*, 1997 Mass. Super. LEXIS 120, *18-*19 (Mass. Super. Ct. June 12, 1997) (refusing to permit plaintiff to allege claim of retaliation where it was not raised in prior MCAD charge alleging disability discrimination).

The First Circuit has concluded that in employment discrimination cases, "the scope of the civil complaint is limited by the charge filed with the EEOC and the investigation which can be reasonably expected to grow out of that charge." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996). If not alleged in the charge, the allegations in the complaint must be limited

to acts that the MCAD or EEOC investigation could reasonably have been expected to uncover. *Windross v. Vill. Auto. Group, Inc.*, 71 Mass. App. Ct. 861, 865 (2008); *Fallon v. Federal Express Corp., Inc.*, 2002 Mass. Super. LEXIS 428, *23,-*24 (Mass. Super. Ct., Oct. 10, 2002) (observing that "[t]he focus of the scope of the investigation rule is whether the factual statement contained in the plaintiff's written charge should have alerted the agency to an alternative basis of discrimination, and whether this additional type of discrimination should have been investigated.") (citing *Conroy v. Boston Edison Co.,* 758 F. Supp. 54, 58 (D. Mass. 1991)). Indeed, "[t]he purposes of G.L. c. 151B would be frustrated if the claimant were permitted to allege one thing in the [administrative] complaint only to allege something entirely different in the ensuing civil action." *Everett*, 453 Mass. at 602 (internal quotations omitted).

Thus, as with ElSayed here, plaintiffs are routinely barred from asserting new forms of discrimination that were not actually alleged in a previous administrative charge.  *See e.g., Kenney v. MML Investors Services, Inc*., 266 F. Supp. 2d 239, 245 (D. Mass. 2003) (stating "the court believes that plaintiff ought to be limited to the four corners of her [EEOC] charge and, therefore" her claims of racial harassment, gender discrimination based on harassment and disparate treatment, constructive discharge based on racial harassment and gender discrimination, and retaliation "should be dismissed as unexhausted" because she only claimed discrimination for race-based and color-based disparate treatment in her EEOC charge); *Valls v. Geon Engineered Films, Inc.*, 2004 Mass. Super. LEXIS 205, *6-*8 (Mass. Super. Ct. Apr. 20, 2004) (holding age discrimination claim not properly before court where plaintiff did not check "age" box on MCAD charge form and where fair reading of charge would not lead to conclusion that it alleged age discrimination); *Fallon*, 2002 Mass. Super. LEXIS 428, at *32 (dismissing

plaintiff's sex discrimination claim where she did not raise it in MCAD charge alleging disability discrimination).

Here, ElSayed attempts to radically alter the allegations she asserted in her Charge. Specifically, the allegations in her Charge related to her being "singled out" by Anna Greener at a May 3, 2017 staff meeting for instigating an office conflict, being falsely accused a few weeks after the staff meeting of using profanity in April 2017, being excluded from an afternoon training session in December 2017 because she missed the morning session even though others were permitted to miss portions of the training, and being placed on a performance coaching plan in retaliation for complaining that she being targeted with respect to the training exclusion. *See* Ex. B. Fundamentally, ElSayed's Charge alleges that she was subjected to office disputes about meetings, training and her performance review, and disparate treatment discrimination and retaliation for complaining about that disparate treatment.

In stark contrast, the Complaint not only alleges new and different allegations, but omits entirely the factual allegations that were the basis of her Charge. For the first time, she alleges that Greener subjected ElSayed to "constant attacks, insults, and mocking" on the basis of her religion and national origin that began sometime after March 2017. *Compl*. ¶¶ 133-138. Specifically, the Complaint states that "Greener told ElSayed that she hoped she was not a terrorist. Greener mocked ElSayed by saying that ElSayed probably did not have running water while in Egypt. Greener told ElSayed that she pitied her. Greener mocked ElSayed saying that it must be difficult to be subject to the rules and laws imposed by her husband, and then asked what those rules were. Greener mocked ElSayed's observance of Ramadan, calling it 'horrible.' Greener would also mock ElSayed's Muslim culture and religion by asking why she does not cover her hair like she must have done in Egypt." *Compl*. ¶ 134. These are allegations of a

hostile work environment that are totally absent from the Charge she filed in 2018, even though all the facts and information ElSayed presents in the Complaint were at her disposal at the time she filed her Charge.  Indeed, the allegations in ElSayed's Charge, solely focused on specific instances of disparate treatment, would not have alerted the MCAD to an alternative basis of discrimination.

Nor can ElSayed now maintain that her claim of hostile work environment would have logically fallen within the scope of an MCAD investigation.  Her newly asserted hostile work environment claims focusing on her religion and national origin surely cannot be inferred from the text of her earlier Charge because her Charge made no mention whatsoever of the alleged harassment upon which she now bases her claim of discrimination and harassment in the Complaint.  This defect is particularly acute here because she completely omits from the Complaint all of the factual allegations that were the basis of her prior Charge.  Therefore, the MCAD could not have possibly known to investigate Greener's purported "constant attacks, insults, and mocking" on the basis of her religion and national origin as alleged in the Complaint. *See Fantini v. Salem State College*, 557 F.3d 22, 26-27 (1st Cir. 2009) (for cases filed with the EEOC, "the scope of the civil complaint" is limited "to the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge."); *see also Everett*, 453 Mass. at 600 (noting that the purpose of the administrative filing requirement is "to provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination" and "to provide notice to defendant of potential liability").

As a result, ElSayed's claims of harassment and retaliation must be dismissed as a matter of law.

## **CONCLUSION**

For the foregoing reasons, PUB respectfully requests that its Motion be granted, that the

Court dismiss Moser, DeMello, and ElSayed from the Complaint with prejudice pursuant to Fed.

R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, and grant PUB

such other and further relief as is just and proper.


Respectfully submitted,

PEOPLE'S UNITED BANK, NA,
By its attorneys,


/s/ *Benjamin R. Davis*
Brian E. Lewis, BBO No. 643717
Matthew A. Porter, BBO No. 630625
Benjamin R. Davis, BBO No. 673017
JACKSON LEWIS LLP
75 Park Plaza, 4th floor
Boston, MA  02116
TELE: (617) 367-0025
FAX: (617) 367-2155


Dated:  September 28, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of September 2020, a copy of the foregoing document was electronically filed with the U.S. District Court for the District of Massachusetts through its Electronic Case Filing System.

*/s/Benjamin R. Davis*
Jackson Lewis LLP