UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENEE WELCH, JASON DEMELLO, MAMADOU DEMBELE, SOULEYMANE MORI, DOLUNAY MOSER, and MINERVA ELSAYED, <br><br> Plaintiffs, <br><br> v. <br><br> PEOPLE'S UNITED BANK, NATIONAL ASSOCIATION, <br><br> Defendant. | Civil Action No. 20-cv-11390-ADB |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiffs Renee Welch, Jason DeMello, Mamadou Dembele, Souleymane Mori, Dolunay Moser, and Minerva Elsayed (collectively, "Plaintiffs") bring this action against Defendant People's United Bank, National Association ("PUB") alleging various forms of employment discrimination. [ECF No. 1 ("Compl.")]. Currently before the Court is PUB's motion to dismiss certain of DeMello's, Moser's, and Elsayed's claims. [ECF No. 8]. For the reasons set forth below, PUB's motion is GRANTED in part and DENIED in part.

I.  BACKGROUND

    A.  Factual Background

For purposes of the instant motion to dismiss, the Court, as it must, "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)). Because Defendant has

moved to dismiss only the claims of DeMello, Moser, and Elsayed, the Court focuses exclusively on the facts germane to those three plaintiffs.

PUB is a foreign corporation with its principal place of business in Connecticut. [Compl. ¶ 9]. It has approximately 400 retail locations, throughout Massachusetts and in other states, and more than 5,500 employees. [Id.].

        1.      DeMello

DeMello is a senior-level banking executive with roughly two decades' worth of experience in the financial services sector. [Compl. ¶ 47]. In April 2016, he began working as a vice president and senior marketing manager for PUB in the Boston area. [Id. ¶ 48]. DeMello is gay. [Id. ¶ 49].

At various times while employed at PUB, DeMello witnessed and/or was the target of derogatory comments/incidents, including the following:

- Patrick Sullivan, the president of PUB in Massachusetts, criticized another gay PUB employee in front of DeMello, stating "AIDS is making [the other employee] lumpy." [Compl. ¶¶ 2, 50];

- Paul Kelly, a vice president at PUB, said "I'm so glad the pansies could make it to the meeting" when DeMello and one of his gay colleagues arrived for a meeting of executives and Human Resources ("HR") representatives. [Id. ¶ 51];

- DeMello brought two gay clients to meet with a senior PUB broker, and the broker refused to shake the clients' hands, noting afterwards that "it's an AIDS thing." [Id. ¶ 52]; and

- Anna Greener, the retail director and senior vice president for growth in Massachusetts, told DeMello that she heard he had "gotten AIDS" and was planning to demote him because he would not be able to fulfill his duties. [Id. ¶¶ 2, 58].

DeMello complained to a PUB executive about these incidents and the toxic workplace, insisting that diversity and inclusion training was necessary. [Id. ¶ 56]. Notwithstanding these complaints, no training was conducted, and the atmosphere did not change. [Id.] Once Greener

2

found out that DeMello was complaining about her, she made it more difficult for him to close loans and interfered with his ability to contract with potentially profitable clients, which negatively affected DeMello's compensation. [Id. ¶ 57]. In July 2017, DeMello resigned. [Id. ¶ 60].

### 2. Moser

Moser is a forty-six-year-old woman with significant experience in the banking industry. [Compl. ¶ 111]. When Moser initially joined PUB, there was a good work environment, [id. ¶ 112], but things changed when Greener became the supervisor of Moser's bank branch, [id. ¶¶ 113–14]. As soon as she arrived, Greener, and Associate Market Manager Michael Zaldumbide, began demeaning, belittling, and degrading Moser by commenting on her looks and body shape. [Id. ¶ 114]. Among other things, Moser was told that (1) she would have been more successful in the banking industry if she were a man, (2) "[b]anking only goes so far with a woman your age. You should consider real estate," and (3) because middle-aged women had no future in banking, she should seek out a more "feminine" career. [Id. ¶ 115]. Moser also witnessed Greener and Zaldumbide making inappropriate remarks to Moser's colleagues, including telling a female associate that her looks would help her "go far in the banking industry" and that the associate should "work closer to the front of the bank where customers could get a better look at her." [Id. ¶ 116].

Moser complained to HR repeatedly, and an HR representative assured Moser that PUB was taking Moser's allegations, and similar allegations made by other employees, seriously. [Compl. ¶ 118]. Nonetheless, PUB did nothing to rectify the situation. [Id. ¶ 120]. Instead, based on Moser's complaints, Greener instructed Zaldumbide to force Moser to quit. [Id. ¶ 122]. Zaldumbide's harassment escalated, but Moser did not quit. [Id.]. Greener called Zaldumbide

3

"incompetent and incapable" because he had not been able to bring about Moser's resignation, told him that she could get Moser to resign "in the blink of an eye," and took a more direct role in Moser's management. [Id.]. As a result of how she was being treated, Moser suffered from anxiety, stress, poor sleep, job performance issues, and experienced unhealthy weight loss. [Id. ¶ 123].

In November 2018, Moser quit and began working for Bank of America ("BOA"). [Compl. ¶ 124]. Even though she no longer worked at PUB, PUB management informed her that it would continue to investigate her claims. [Id. ¶ 125]. It did not do so. [Id.]. Instead, a negative review, with her signature forged on it, was placed into her employment file. [Id. ¶ 126]. In the Fall of 2019, Moser initiated an action against PUB before the Massachusetts Commission Against Discrimination (the "MCAD"), alleging violations of Massachusetts General Laws Chapter 151B, § 4 ("Chapter 151B") and Title VII of the Civil Rights Act of 1964 ("Title VII"). [Id. ¶ 128].

### 3. Elsayed

Elsayed is a practicing Muslim of Egyptian descent. [Compl. ¶ 129]. She has been in the banking industry since 2000, working as a vice president at both Citizen's Bank and BOA. [Id. ¶ 130]. She began working at PUB in September 2013 as a manager at PUB's branch in Malden, Massachusetts. [Id. ¶ 131]. In March 2017, she started reporting to Greener, and the work environment turned toxic. [Id. ¶ 132]. Once Greener learned that Elsayed was Muslim and had relatives who had lived in Egypt, she began insulting and mocking Elsayed. [Id. ¶ 133]. For instance, Greener (1) told Elsayed that she hoped Elsayed was not a terrorist, (2) joked that Elsayed likely did not have running water in Egypt, (3) suggested that it must be difficult for Elsayed to be subject to laws and rules imposed by Elsayed's husband, (4) called Ramadan

4

"horrible," and (5) asked Elsayed why she did not cover her hair like she must have done in Egypt. [Id. ¶ 134]. Elsayed complained, both directly to Greener and to PUB management, to no avail. [Id. ¶¶ 136–38]. After Elsayed complained, Greener manufactured reasons to criticize Elsayed's job performance. [Id. ¶ 139].

Elsayed left the bank when continuing to work there became untenable. [Compl. ¶ 140]. To cope with discrimination and retaliation, Elsayed sought psychiatric treatment and was prescribed anti-depressants. [Id. ¶ 141]. Since leaving PUB, she has been unable to find another job. [Id. ¶ 141]. On or about September 14, 2018, Elsayed filed an MCAD complaint against PUB alleging Chapter 151B and Title VII violations. [Id. ¶ 142].

### B. Procedural Background

Plaintiffs filed their complaint on July 24, 2020. [Compl.]. As is relevant to the instant motion, DeMello brings a sexual orientation-based discrimination claim pursuant to Chapter 151B and Title VII (Count I) as well as a common law claim for wrongful termination in violation of public policy (Count IV), [id. ¶¶ 147, 150–60, 177–84], Moser brings a gender-based discrimination claim under Chapter 151B and Title VII (Count I) as well as a claim for age discrimination under the Age Discrimination in Employment Act and Chapter 151B (Count III), [id. ¶¶ 148, 150–60, 169–76], and Elsayed brings a discrimination claim under Chapter 151B and Title VII based on her national origin and religion (Count I), [id. ¶¶ 149–60]. On September 28, 2020, PUB moved to dismiss certain of DeMello's, Moser's, and Elsayed's claims. [ECF No. 8]. Plaintiffs opposed on October 8, 2020, [ECF No. 12], PUB replied on October 22, 2020, [ECF No. 15], and Plaintiffs filed a sur-reply on October 26, 2020, [ECF No. 18].

II.     **LEGAL STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible . . . ." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." Elsevier, 732 F.3d at 80 (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must

6

determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III. DISCUSSION

### A. DeMello

#### 1. Chapter 151B and Title VII

"Both Title VII and Chapter 151B require an employee to exhaust the administrative process before filing a civil suit in court and failure to do so normally precludes the filing of that claim." Posada v. ACP Facility Servs., Inc., 389 F. Supp. 3d 149, 158 (D. Mass. 2019) (first citing Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005); then citing Everett v. 357 Corp., 904 N.E.2d 733, 746–47 (Mass. 2009)). It is undisputed that DeMello did not file an administrative complaint with either the Equal Employment Opportunity Commission ("EEOC") or the MCAD before bringing this suit against PUB. [Compl. ¶ 147 (allegation regarding failure to file EEOC charge); ECF No. 12 at 8, 12 (concessions concerning failure to exhaust administrative remedies)]. PUB argues that DeMello's Chapter 151B and Title VII claims must be dismissed on that basis. [ECF No. 9 at 7–9]. DeMello responds that, until the Supreme Court's ruling in Bostock v. Clayton County, sexual orientation-based discrimination was not cognizable under Title VII, and that even if the Court disagrees, it should exercise its equitable discretion to excuse his failure to exhaust the administrative process. [ECF No. 12 at 8–10].

Chapter 151B explicitly proscribes employment discrimination based on sexual orientation. Mass. Gen. Laws ch. 151B, § 4(1) ("It shall be an unlawful practice . . . [f]or an employer, by himself or his agent, because of the . . . sexual orientation . . . of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of

employment . . . ."). Further, the statute has barred sexual orientation-based discrimination since DeMello's employment at PUB (i.e., in 2016 and 2017). See McCrohan v. Uxbridge Police Ass'n Loc. #123, MCOP, AFL-CIO, No. 11-cv-40232, 2014 WL 12769267, at *5 n.4 (D. Mass. Nov. 12, 2014) (noting that, at least as of November 2014, "Title VII does not protect employees from discrimination based on sexual orientation, whereas 151B does"). Because DeMello failed to file an administrative complaint with the MCAD and offers no explanation as to why he failed to do so, his Chapter 151B claim must be dismissed. See Everett, 904 N.E.2d at 746 ("The predicate of administrative filing is mandatory to filing a civil suit."); Cuddyer v. Stop & Shop Supermarket Co., 750 N.E.2d 928, 936 n.11 (Mass. 2001) ("A claim cannot be brought alleging discrimination under G.L. c. 151B, unless it is preceded by the filing of a complaint of unlawful discrimination with the MCAD . . . .").

As to DeMello's Title VII claim, although Title VII claimants are required to file an EEOC charge before commencing civil litigation, the requirement is not jurisdictional. Fort Bend Cnty. v. Davis, 139 S. Ct. 1843, 1846 (2019). Accordingly, the requirement can be waived by the parties or the Court. See Martínez-Rivera v. Commonwealth of P.R., 812 F.3d 69, 78 (1st Cir. 2016). PUB has not waived the requirement. DeMello urges the Court to exercise its discretion to permit him to advance his Title VII claim even though he did not exhaust his administrative remedies because, in his view, until the Supreme Court's June 2020 decision in Bostock, he did not have a viable Title VII claim and therefore had no reason to file an administrative complaint. [ECF No. 12 at 8].

First, the Supreme Court did not create a new cause of action in Bostock. "A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Rivers v. Roadway Express, Inc.,

8

511 U.S. 298, 312–13 (1994); see Doe v. DeJoy, No. 19-cv-05885, 2020 WL 4382010, at *12 (E.D. Pa. July 31, 2020) (noting that it did not need to consider Bostock's "retroactivity" because when the Supreme Court interprets a federal statute, it is not creating new law but rather clarifying what the statute meant all along).  Accordingly, if DeMello's allegations are true and PUB discriminated against him because of his sexual orientation in 2016 and 2017, see [Compl. ¶¶ 49–58], PUB violated Title VII regardless of whether existing First Circuit precedent recognized such a claim, see, e.g., Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999) ("[A]nd we regard it as settled law that, as drafted and authoritatively construed, Title VII does not proscribe harassment simply because of sexual orientation.").

Second, even if the Supreme Court did create a new right of action in Bostock, DeMello does not explain why he filed this suit as opposed to filing an EEOC complaint.  Nor does he explain why, if he was waiting for the Supreme Court to confirm the viability of a potential Title VII claim, he did not seek recourse under Chapter 151B, which clearly provided an avenue for relief, by filing an MCAD complaint.

Under these circumstances, the Court declines to waive the administrative exhaustion requirement and forgo all its attendant benefits.  See Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997) ("We have explained that the purposes of the exhaustion requirement are to promote administrative efficiency, 'respect[ ] executive autonomy by allowing an agency the opportunity to correct its own errors,' provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record." (alteration in original) (quoting Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir. 1986))).  Although the Court is somewhat sympathetic to DeMello's position, it will not read Bostock as an invitation for individuals with sexual orientation-based discrimination claims,

premised on alleged misconduct years ago, to sidestep Title VII's administrative exhaustion requirements and proceed straight to court.

In the alternative, DeMello asks the Court to dismiss his claim without prejudice so that he may now file an EEOC complaint. [ECF No. 12 at 10; ECF No. 18 at 4]. PUB responds that even if the Court grants this request, DeMello's claim will still be time-barred. [ECF No. 15 at 6]. If DeMello files with the EEOC, the EEOC can address whether DeMello's claim, which concerns alleged misconduct in 2016 and 2017, is time-barred and/or whether cause exists to excuse this untimeliness. Accordingly, DeMello's Title VII claim is dismissed without prejudice.

In sum, PUB's motion to dismiss Count I (Chapter 151B and Title VII) as alleged by DeMello, [ECF No. 8], is GRANTED. DeMello's Chapter 151B claim is dismissed with prejudice, and his Title VII claim is dismissed without prejudice.

### 2. Wrongful Termination

DeMello's claim that PUB terminated him in contravention of Massachusetts public policy is premised on the allegation that PUB fired him because of his repeated and overt objections to PUB's discrimination against minority and gay employees. [Compl. ¶¶ 179–80]. PUB asserts that DeMello's wrongful termination claim fails as a matter of law because Chapter 151B provides his exclusive remedy. [ECF No. 9 at 9–11]. DeMello maintains that Chapter 151B does not, in fact, preclude his claim. [ECF No. 12 at 10–12].

"The cause of action for wrongful termination in violation of public policy does not apply where 'there is a comprehensive remedial statute, [and] the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme.'" Perez v. Greater New Bedford Vocational Tech. Sch. Dist., 988 F. Supp. 2d 105, 113 (D. Mass.

2013) (alteration in original) (quoting Melley v. Gillette Corp., 475 N.E.2d 1227, 1229 (Mass. App. Ct. 1985), aff'd, 491 N.E.2d 252 (Mass. 1986)).  In Massachusetts, the public policy against discrimination-based retaliatory discharge is embodied by Chapter 151B, which forbids employers from firing employees for opposing discriminatory employment practices.  Mass. Gen. Laws ch. 151B, § 4(4) ("It shall be an unlawful practice . . . [f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.").  Courts consider Chapter 151B a comprehensive remedial statute, and therefore generally preclude plaintiffs from bringing common law wrongful termination claims premised on discriminatory employment practices barred by Chapter 151B.  Ourfalian v. Aro Mfg. Co., 577 N.E.2d 6, 8 (Mass. App. Ct. 1991) (affirming dismissal of common law wrongful termination claim because the "statutes upon which the plaintiff relies for public policy pronouncements contain recognized and comprehensive sanctions"); Melley, 475 N.E.2d at 1228–30 (affirming dismissal of plaintiff's wrongful termination claim because it was premised on a public policy against age discrimination, the violation of which was already comprehensively protected by Chapter 151B); Claudomir v. Commonwealth of Mass., No. 15-cv-12867, 2016 WL 492754, at *5 (D. Mass. Feb. 8, 2016) (finding that because there was no common law cause of action for age discrimination before Chapter 151B, plaintiff's public policy wrongful termination claim was barred and Chapter 151B provided his exclusive remedy); cf. Dexter v. Dealogic, LLC, 390 F. Supp. 3d 233, 244 (D. Mass. 2019) (rejecting common law claim for breach of the implied

11

covenant of good faith and fair dealing based on pregnancy discrimination because Chapter 151B provides an exclusive remedy).[1]

The purpose of the common law cause of action for public policy wrongful termination is to make redress available to individuals without other legal recourse, such as individuals who are fired for filing a worker's compensation claim, serving on a jury, or refusing to commit perjury. See Upton v. JWP Businessland, 682 N.E.2d 1357, 1358 (Mass. 1997).  It does not exist to allow employees like DeMello to avoid the pre-filing requirements of Chapter 151B.  See Hunt v. Wyle Lab'ys, Inc., 997 F. Supp. 84, 91 (D. Mass. 1997) ("The Court holds that [plaintiff]'s attempt to circumvent the strict filing requirements of G.L. ch. 151B by casting his handicap discrimination claim as a common law claim for wrongful termination is precluded as a matter of firmly entrenched law.").

Although DeMello is correct that Chapter 151B "broadens existing remedies rather than requiring resort to it as exclusive of all other remedies" and does not "narrow or eliminate a person's common law rights where applicable," Comey v. Hill, 438 N.E.2d 811, 817 (Mass. 1982), he does not identify an applicable specific common law right or remedy that pre-dated Chapter 151B.[2]  Put slightly differently, DeMello's asserted right—to sue PUB for firing him

---

[1] Courts take a similar approach with other comprehensive remedial statutes.  See, e.g., Limoli v. Delta Air Lines, Inc., No. 18-cv-10561, 2019 WL 6253269, at *9 (D. Mass. Nov. 22, 2019) (granting summary judgment in defendant's favor because plaintiff's public policy wrongful termination claim was precluded by the Family Medical Leave Act).

[2] DeMello cites no case in which a court permitted a plaintiff to advance a public policy wrongful termination claim where the public policy allegedly violated was created by a comprehensive remedial statute, like Chapter 151B. [ECF No. 12 at 10–12; ECF. No. 18 at 4–5]. Further, the cases that DeMello does cite are unconvincing.  Some are too factually distinguishable to be applicable.  See Comey, 438 N.E.2d at 817 (finding that plaintiff's tortious interference claim was not barred by Chapter 151B even though plaintiff's theory was that defendant maliciously interfered because of his age); Shalaby v. Arctic Sand Techs., Inc., No. 14-cv-03621, 2014 WL 7235830, at *8 (Mass. Super. Ct. Dec. 15, 2014) (finding that Chapter

because he reported and objected to discriminatory employment practices—is a creature of statute. See Claudomir, 2016 WL 492754, at *5 (noting that because "no common law principles existed prior to the enactment of [Chapter 151B] that would have afforded [plaintiff] a remedy, [] Comey does not apply").

Because DeMello's public policy wrongful termination cause of action simply recasts his Chapter 151B claim, it is barred, and PUB's motion to dismiss Count IV, [ECF No. 8], is therefore GRANTED.

B.   Moser

PUB argues that Moser's Title VII and Chapter 151B claims must be dismissed because she failed to timely file an administrative charge with the MCAD, which is a precondition to filing suit. [ECF No. 9 at 6–7; ECF No. 15 at 1–5]. Moser maintains that her failure is not fatal because of the continuing violation doctrine, and that even if that doctrine is inapplicable, the filing requirement should be equitably tolled. [ECF No. 12 at 4–7; ECF No. 18 at 2–3].

---

151B did not bar plaintiff's breach of contract claim because it was "not based on allegations of discrimination that would violate [Chapter 151B]"). Others do not involve Chapter 151B or any other comprehensive remedial statue and merely stand for the general proposition that Massachusetts recognizes a common law cause of action for wrongful termination in violation of public policy. See Shea v. Emmanuel Coll., 682 N.E.2d 1348, 1349–50 (Mass. 1997) (discussing Massachusetts public policy regarding employees reporting employer's criminal activity); Wright v. Shriners Hosp. for Crippled Child., 589 N.E.2d 1241, 1243–45 (Mass. 1992) (discussing Massachusetts public policy vis-à-vis an employer firing an employee as reprisal for employee's critical business-related remarks); Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 533 N.E.2d 1368, 1371–72 (Mass. 1989) (rejecting plaintiff's public policy wrongful termination claim because "[a]n employee, even one in a socially important occupation, who simply disagrees with her employer's policy decisions, may not seek redress in the courts"); Rodden v. Savin Hill Enters., LLC, No. 15-cv-03194, 2016 WL 1688688, at *5 (Mass. Super. Ct. Apr. 21, 2016) (denying motion to dismiss where plaintiff alleged that he was fired for "making internal complaints about [defendant]'s violation of state and federal employment tax law").

Moser alleges, among other things, that: (1) she quit in November 2018; (2) after she left, PUB assured her that it "would continue to investigate her claims of discrimination and harassment and would allow her to participate in those investigations"; (3) no investigation took place; (4) a negative performance review, with her forged signature, was placed in her file after she left the bank to "retaliate against [her] and to harm her future employment opportunities"; and (5) she did not become aware of this negative performance review until this litigation began. [Compl. ¶¶ 124–27].  The parties seem to agree that, if Moser's allegations were limited to PUB's conduct up to and including the date of her departure, Moser would have been required to file her administrative charge by September 26, 2019.  See [ECF No. 15 at 4–5; ECF No. 12 at 4].  It is undisputed that she did not do so.  See [Compl. ¶ 128; ECF No. 9-1 at 5–6, 12].[3]  Thus the Court must determine whether there is any reason to excuse Moser's noncompliance and revive her time-barred claims.

"Under Title VII . . ., the continuing violation doctrine 'allows an employee to seek damages for otherwise time[-]barred allegations if they are deemed part of an ongoing series of discriminatory acts and 'there is some violation within the statute of limitations period that anchors the earlier claims.'"  DaCosta v. Town of Plymouth, No. 11-cv-12133, 2014 WL 2998986, at *14 (D. Mass. July 1, 2014) (quoting Loubriel v. Fondo del Segundo del Estado, 694 F.3d 139, 144 (1st Cir. 2012)).  "To qualify as an anchoring act, the discriminatory act must 'substantially relate[ ] to [the] earlier incidents of abuse.'"  Lockridge v. The Univ. of Me. Sys., 597 F.3d 464, 474 (1st Cir. 2010) (alterations in original) (quoting Noviello v. City of Bos., 398 F.3d 76, 86 (1st Cir. 2005)).  "Finally, the continuing violation 'doctrine does not apply to

---

[3] Moser signed her MCAD complaint on September 27, 2019, [ECF No. 9-1 at 12], but it did not get filed until October 3, 2019, [id. at 5].  Using either date, she did not meet her September 26, 2019 deadline.

14

discrete acts of alleged discrimination that occur on a particular day.' Rather, the doctrine only applies 'to discriminatory conduct that takes place over a series of days or perhaps years.'" DaCosta, 2014 WL 2998986, at *15 (citations and internal quotation marks omitted) (quoting Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009)).

"Massachusetts law also adheres to the continuing violation doctrine as an exception to the limitations periods in chapter 151B." DaCosta, 2014 WL 2998986, at *15 (citing Noviello, 398 F.3d at 86). The Massachusetts Supreme Judicial Court (the "SJC") has held that "in certain discrimination cases arising under G.L. c. 151B, § 4, . . . the continuing violation doctrine permits plaintiffs to recover for damages occurring outside the limitations period as long as 'there is a discrete violation within the [statute of] limitations period to anchor the earlier claims.'" Crocker v. Townsend Oil Co., Inc., 979 N.E.2d 1077, 1084–85 (Mass. 2012) (alteration in original) (quoting Cuddyer, 750 N.E.2d at 936–37). Further, the "alleged timely discriminatory acts [must] have a substantial relationship to the alleged untimely discriminatory acts." Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 808 N.E.2d 257, 266 (Mass. 2004). Lastly, a plaintiff generally must show that "earlier violations outside the [] limitations period did not trigger [the plaintiff's] 'awareness and duty' to assert his rights, i.e., that [the plaintiff] could not have formed a reasonable belief at the time the employment actions occurred that they were discriminatory." Id. at 266–67.

Moser has alleged a particular unlawful act within the limitations period (i.e., the placement of a doctored performance review in her file as retaliation for her complaints of discrimination), [Compl. ¶¶ 126–27],[4] that could well tie into a broader pattern of discriminatory

---

[4] Although Moser has not alleged the precise date on which the document was placed into her file, that information is in the exclusive possession of PUB and her failure to cite a specific date cannot be held against her at this stage.

conduct (i.e., being mistreated based on her gender and age), [id. ¶¶ 114–24]. Discovery will reveal whether there is a substantial relationship between the allegedly doctored performance review and the alleged gender and age-based discrimination and/or whether PUB's earlier violations triggered Moser's awareness and duty to assert her rights. Moser's allegations, however, are sufficient to withstand PUB's motion.[5] Accordingly, PUB's motion to dismiss Count I as asserted by Moser, [ECF No. 8], is DENIED.

### C. Elsayed

PUB argues that Elsayed's Chapter 151B and Title VII claim is barred because her allegations of discrimination here are inconsistent with the allegations contained in her initial MCAD charge. [ECF No. 9 at 11–14; ECF No. 15 at 7–8]. Elsayed maintains that the allegations in her MCAD charge, which she filed *pro se*, are sufficient to preserve her claim. [ECF No. 12 at 13–15; ECF No. 18 at 5].

> Both Title VII and Chapter 151B require an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination. The purpose of that requirement is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation. That purpose would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action. Consequently, . . . in employment discrimination cases, [t]he scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge. In cases where, as here, the employee acts *pro se*, the administrative charge is liberally construed in order to afford the complainant the benefit of any reasonable

---

[5] Notably, the continuing violation cases on which PUB relies were not decided at the motion to dismiss stage. In Ocean Spray, the SJC was adjudicating the appeal of an MCAD decision based on a full record, see 808 N.E.2d at 260, 272 ("A commissioner conducted the hearing over four days in April and June, 1997, after which he issued a written decision including detailed findings of fact and conclusions of law."), and in Cuddyer, the SJC was reviewing a summary judgment ruling, see 750 N.E.2d at 930 ("We set out the background of the case by reciting the facts in the summary judgment record as viewed in the plaintiff's . . . ."). PUB's arguments may carry the day at summary judgment, but Moser's allegations are sufficient to survive a motion to dismiss.

> doubt . . . . [A]n employee is not required to comprehensively set forth with "literary exactitude" all of the facts and theories upon which his or her claim is based.

Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996) (first alteration in original) (citations and internal quotation marks omitted). On September 14, 2018, Elsayed filed a *pro se* MCAD charge. [ECF No. 9-2 at 4–5].[6] In it, she alleged, among other things, that Greener, and other PUB employees, discriminated against her because of her religion and national origin. See [id. at 4 ("I, Minerva Elsayed, . . . believe that I was discriminated against by People's United Bank on the basis of Creed, National Origin, . . ."); id. ("Greener has subjected me to harassment and disparate treatment based on my ancestry, age, gender and religion"); id. at 5 ("On January 7, 2018, I complained to Senior HR Manager, Doreen Moffat, that I felt Greener and others were targeting me based on my race and ancestry . . . ."); id. ("I believe that [PUB] has discriminated against me based on my race, ancestry, sex, age and religion by subjecting me to disparate treatment and a hostile work environment . . . .")].

Elsayed's allegations in this lawsuit, [Compl. ¶¶ 129–44], fall squarely within the scope of her MCAD complaint. Based on the allegations in Elsayed's MCAD complaint, one would reasonably expect an MCAD investigation to uncover the allegedly discriminatory remarks that Greener made to Elsayed, which form the basis of her complaint here. See Windross v. Village Auto. Grp., Inc., 887 N.E.2d 303, 307 (Mass. App. Ct. 2008) ("[A] claim that is not explicitly stated in the administrative complaint may be asserted in the subsequent [civil] action so long as it is based on the acts of discrimination that the MCAD investigation could reasonably be

---

[6] The Court may consider Elsayed's MCAD complaint because it is referenced in the complaint, is central to her claim, and its authenticity is undisputed. Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

expected to uncover."). The fact that Elsayed did not identify, in her initial MCAD complaint, the allegedly discriminatory comments made by Greener that are cited in the instant complaint (and that some of the incidents alluded to in the MCAD complaint do not appear in this complaint) is not fatal. See Lattimore, 99 F.3d at 464 ("[A]n employee is not required to comprehensively set forth with 'literary exactitude' all of the facts and theories upon which his or her claim is based."). Further, Elsayed is not attempting a bait-and-switch, see id. (noting that an employee cannot "allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action"), and, in light of Elsayed's clear and repeated assertions about Greener's alleged discrimination in her MCAD complaint, [ECF No. 9-2 at 4–5], the Court finds that PUB had adequate notice and an opportunity for early conciliation, see Lattimore, 99 F.3d at 464.

In sum, the Court finds that Elsayed's MCAD complaint was sufficient to preserve her claim, and PUB's motion to dismiss Count I as asserted by Elsayed, [ECF No. 8], is therefore DENIED.

## IV.   CONCLUSION

Accordingly, for the reasons stated above, PUB's motion to dismiss, [ECF No. 8], is GRANTED in part and DENIED in part. DeMello's claim under Chapter 151B (Count I) and claim for common law wrongful termination (Count IV) are dismissed with prejudice, and his claim under Title VII (Count I) is dismissed without prejudice. PUB's motion to dismiss Moser's and Elsayed's claims is DENIED.

**SO ORDERED.**

April 13, 2021                                                    /s/ Allison D. Burroughs
                                                                                             ALLISON D. BURROUGHS
                                                                                             U.S. DISTRICT JUDGE